IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WE-DO-IT PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> WE-DO-IT INC., <br><br> Defendant. | C.A. No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff we-do-IT Pty Ltd. ("Plaintiff") files this complaint against Defendant we-do-IT Inc., ("Defendant"), and in support thereof alleges as follows:

## INTRODUCTION

1. By this action, Plaintiff seeks declaratory, injunctive, and monetary relief arising from Defendant's willful infringement and unlawful exploitation of Plaintiff's WE-DO-IT trademark in connection with information technology ("IT") services.

2. The clear intent of Defendant's activities is to misrepresent that Defendant is associated with or connected to Plaintiff's long-running and successful IT services business.

3. Plaintiff provides various back-office IT services to sophisticated companies in the electric, gas, water, and telecommunications utility space. Since 1995, Plaintiff has provided those services to consumers under the WE-DO-IT trademark. Pertinent to this action, Plaintiff began using the WE-DO-IT trademark in the United States in 2002 and has continued to use the mark in the United States since then either by itself or through its authorized licensees.

4. To continue Plaintiff's prior work in the United States under the WE-DO-IT mark, Plaintiff formed Defendant to serve Plaintiff's *existing* U.S. customers and to grow the WE-DO-IT brand in the United States.

5. Defendant was formed as a majority-owned subsidiary of Plaintiff and was part of a global we-do-IT family of companies for which we-do-IT Holding Pty Ltd. is the ultimate parent company (the "we-do-IT Group"). Defendant operated in the United States under the WE-DO-IT trademark and brand under express license from Plaintiff with all use of WE-DO-IT by Defendant inuring to the benefit of Plaintiff. The we-do-IT Group, including Defendant, used the WE-DO-IT trademark only under express permission and license from Plaintiff, shared resources, and targeted particular markets.

6. At no time was Defendant permitted to use or continue using the WE-DO-IT trademark independently to further its own, separate business interests. To the contrary, Defendant worked together with the we-do-IT Group to benefit the entire enterprise.

7. After more than 10 years of operating within the we-do-IT Group and under license from Plaintiff to use the WE-DO-IT trademark, Defendant began operating as an independent entity, although Plaintiff continues to hold a minority stake in Defendant.

8. As a consequence of Defendant's shift to an independent company, Plaintiff expressly informed Defendant that its license to use the WE-DO-IT trademark would be terminated effective March 31, 2023.

9. Rather than rebrand, Defendant has continued to use the WE-DO-IT trademark and has even applied to register a trademark which incorporates the WE-DO-IT trademark with the U.S. Patent and Trademark Office. To add further insult, Defendant has accused *Plaintiff* of infringement and claimed that the WE-DO-IT trademark belongs to *Defendant*.

10. As described herein, Defendant's blatant and unlawful attempt to steal the goodwill and name recognition that Plaintiff has built in its WE-DO-IT trademark over decades of use

2

constitutes willful trademark infringement and unfair competition in violation of the Lanham Act. 15 U.S.C. § 1051, *et seq.*

## THE PARTIES

11. Plaintiff is an Australian proprietary company limited by shares. Plaintiff is the principal operating entity of a global group of companies operating under the WE-DO-IT brand that provides various back-office information technology services to sophisticated companies in the electric, gas, water, and telecommunications utility space.

12. Defendant is a Delaware corporation and, until 2018, was a controlled subsidiary of Plaintiff. Plaintiff continues to hold a minority stake in Defendant.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Defendant because it resides in the District of Delaware.

14. This Court has original jurisdiction over the subject matter of the claims brought herein under the Lanham Act, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

15. Venue is proper in this District because Defendant is a Delaware corporation. 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

### Background of we-do-IT Pty Ltd. and Expansion into United States

16. Plaintiff has been in business since 1995, when it was incorporated in Australia. Dr. Walter Hesse was the founder and director of Plaintiff at its inception.

17. From the beginning, Plaintiff, under the we-do-IT brand, has provided back-end services, such as data engineering, analytics, conflation, process automation, and geographic information services and consulting, to sophisticated companies in the public utility space.

18. Since 1996, Plaintiff has owned, operated and advertised its IT services using the domain name we-do-it.com. The screen shot below depicts Plaintiff's website as it existed on December 19, 1996.



19. Over time, Dr. Hesse expanded the geographic reach of Plaintiff's business.

20. For example, in 2002, Plaintiff entered the U.S. market under the WE-DO-IT trademark by entering into an agreement with TUI Consulting Inc., a company based in Wyomissing, Pennsylvania, to provide IT services to U.S. customers, including the City of Tacoma.

21. Later, in 2004, Plaintiff formed we-do-IT Products Pty Ltd. in Australia, which also provided products and services into the U.S. market under the WE-DO-IT mark.

22. Justin Eldridge, a senior employee of Plaintiff, who later became a shareholder of Defendant, presented at the GE Energy Smallworld 2005 Americas Users Conference, touting Plaintiff's work for the City of Tacoma and pitching Plaintiff's services to other potential customers.

23. Plaintiff's presence in North America continued to grow. As of 2008, a U.S.-based company, Ubisense Inc., was the exclusive solutions provider on Plaintiff's behalf of Plaintiff's proprietary adjust.IT software in North America. And as of 2009, Plaintiff also had added Duke Energy and Piedmont Natural Gas to its roster of U.S. utility customers.

24. All of this work, performed under the WE-DO-IT trademark, took place in the United States, and North America generally, years before Defendant even existed as a company.

25. In connection with growing the we-do-IT business outside of Australia, Dr. Hesse formed subsidiary entities to service particular geographic markets. For example, in August 2000, Dr. Hesse incorporated we-do-IT (NZ) Ltd. in New Zealand.

26. In 2010, Dr. Hesse formed Defendant to serve U.S. customers. Collectively, the related companies in the we-do-IT Group include entities in New Zealand, the UK, Europe, India, Singapore, and the United States, for which Plaintiff serves as the principal operating entity.

**Formation of we-do-IT Inc. and Collective Operation of the we-do-IT Group**

27. Dr. Hesse's decision to form Defendant in 2010, served at least two purposes. First, Mr. Eldridge had expressed a desire to move to the United States. Dr. Hesse, wanting to retain a valued employee, formed Defendant to allow Mr. Eldridge to move to the United States while still working for Plaintiff. Second, because Plaintiff already had established relationships with several U.S. customers, Defendant would provide a "boots on the ground" presence to serve those customers.

28. On August 24, 2010, Defendant was incorporated, with Dr. Hesse and Mr. Eldridge named as the initial directors, and with Plaintiff and Mr. Eldridge and his wife (the "Eldridges") as the initial shareholders. Originally, Plaintiff held a 51% share of Defendant, with the Eldridges

holding 49%. After a 2018 share buyback, however, the Eldridges' ownership stake in Defendant increased to 60.08%, with Plaintiff holding the remaining shares.

29. Although neither Plaintiff nor its ultimate parent company we-do-IT Holding Pty Ltd. wholly owned Defendant, as is the case with other we-do-IT Group entities, Defendant still operated as part of the collective group of related companies and was a fully integrated member of the we-do-IT Group, which includes we-do-IT (NZ) Limited in New Zealand, we-do-IT GmbH in Germany, we-do-IT (Europe) Ltd. in the United Kingdom and Europe generally, we-do-IT (India) Pvt Ltd. in India, and we-do-IT (Singapore) Pte Ltd. in Singapore. That remained true even after the Eldridges acquired a majority stake in Defendant.

30. The we-do-IT Group created business efficiencies by sharing resources among one another. The relationships between and obligations among the we-do-IT Group are evidenced by, among other things, a resource allocation agreement, dated February 1, 2022, and executed by Justin Eldridge and Erik Potter on behalf of Defendant. In that agreement, the shared services identified to be used by the we-do-IT Group included:

- Administrative services, i.e., planning, accounting, auditing, and legal;
- Financial—management of cash flows, working capital, deposits, interest and currency exposures;
- Distribution and marketing;
- Website, advertising;
- HR, recruitment;
- Policies—environmental, Covid-19 for use across the we-do-IT Group;
- Specific training for senior management;
- Market analyses; and
- Administration of intangibles.

6

Resource Allocation and Recharge Agreement attached hereto as Exhibit "1".

31. Additionally, because the we-do-IT Group, including Defendant, operated under Plaintiff's WE-DO-IT trademark, each company was granted a nonexclusive license to use the mark. This also included the ability to use the we-do-IT Group's integrated I.T. systems, the we-do-it.com domain and @we-do-it.com email addresses. Indeed, up until as late as May 2022, representatives of Defendant used Plaintiff's WE-DO-IT trademark, including in their email signatures as shown below:



32. Under the shared resources and licensing agreements, each entity in the we-do-IT Group was equipped to serve and grow Plaintiff's customer base in their respective geographic markets. For Defendant, that market was North America, and the United States in particular.

33. By virtue of these licensing agreements, all use of the WE-DO-IT trademark by each entity within the we-do-IT Group in the jurisdictions in which they operate constitutes authorized use of Plaintiff's trademark in those jurisdictions, and all reputation and goodwill arising from that use in each relevant jurisdiction inures to the benefit of Plaintiff.

**Plaintiff's Ownership of the WE-DO-IT Trademark**

34. Plaintiff is the owner of Australia Trademark Registration No. 1567267 for WE-DO-IT for "Compilation of information relating to information technology; Information services relating to information technology; Information technology (IT) consultancy; Information

technology (IT) services (computer hardware, software and peripherals design and technical consultancy); Provision of information relating to information technology" in International Class 42. The Australia registration was granted on February 13, 2014. Australian trademark registration record attached hereto as Exhibit "2".

35. Plaintiff also owns International Trademark Registration No. 1674608 for its WE-DO-IT trademark. International Trademark Registration Number 1674608 covers Class 35 for "Compilation of information relating to information technology" and Class 42 for "Information services relating to information technology; information technology (IT) consultancy; information technology (IT) services (computer hardware, software and peripherals design and technical consultancy); provision of information relating to information technology." In connection with filing its International Trademark Application for protection of its WE-DO-IT trademark on March 19, 2022, Plaintiff designated Canada, the European Union, the United Kingdom, New Zealand, and the United States. International trademark registration record attached hereto as Exhibit "3".

36. The U.S. designation of Plaintiff's International Trademark Registration is U.S. Trademark Application No. 79/346,062 for WE-DO-IT in Class 35 for "Compilation of information relating to information technology" and Class 42 for "Information services relating to information technology; information technology (IT) consultancy; information technology (IT) services (computer hardware, software and peripherals design and technical consultancy); provision of information relating to information technology." Plaintiff's application was approved by the U.S. Trademark Office and published for opposition on May 16, 2023. U.S. trademark application record attached hereto as Exhibit "4".

37. In addition to the foregoing trademark rights, Plaintiff owns common law trademark rights in the WE-DO-IT trademark by virtue of its exclusive use of the mark in Australia since 1995 and in the United States since 2002.

**Plaintiff and Defendant Separate their Businesses**

38. In 2022, Plaintiff and Defendant agreed that Defendant should operate as an independent entity and no longer be part of the we-do-IT Group.

39. In an email dated May 4, 2022, Dr. Hesse notified the Eldridges and others working for Defendant that, to operate independently, Defendant would need to create a separate domain name and website, as Plaintiff would be revoking Defendant's license to use the WE-DO-IT trademark. The email imposed a deadline of June 30, 2022 to make this change. Email dated May 4, 2022, attached hereto as Exhibit "5".

40. The next day, Defendant's CEO, Erik Potter acknowledged Dr. Hesse's email and Defendant's obligation to rebrand and refrain from using the WE-DO-IT trademark. Email dated May 5, 2022, attached hereto as Exhibit "6".

41. Defendant subsequently changed its domain name to wdigis.com and commenced using @wdigis.com email addresses.

42. Defendant also subsequently commenced using the trademarks as shown in the email signatures below:






43. On November 18, 2022, without Plaintiff's authorization or knowledge, Erik Potter, using the name "John E. Potter d/b/a WDI Inc." filed U.S. Trademark Application Number 97/684,180 for the trademark shown below in classes 35 and 42—the same classes as Plaintiff's trademark—and claiming that the mark was first used on May 16, 2022:



U.S. trademark application record attached hereto as Exhibit "7".

44. Mr. Potter assigned the trademark application to we-do-IT, Inc.[1] on May 25, 2023, after Plaintiff discovered the trademark application. Trademark assignment attached hereto as Exhibit "8".

45. Not only is Defendant unlawfully continuing to use Plaintiff's WE-DO-IT trademark without Plaintiff's authorization and attempting to fraudulently obtain a U.S. Trademark Registration which incorporates Plaintiff's WE-DO-IT trademark, but Defendant also has attempted to stop *Plaintiff* from using *its own* trademark.

---

[1] Upon information and belief, we-do-IT, Inc. is the same entity as Defendant.

46. On November 16, 2022, Defendant, through counsel, sent a letter to Plaintiff stating that Defendant has priority of use of the WE-DO-IT trademark in the United States and that Plaintiff was infringing on Defendant's rights. November 16, 2022 letter attached hereto as Exhibit "9".

47. In December 2022, through counsel, Plaintiff explicitly terminated the license pursuant to which Defendant was permitted to use the WE-DO-IT trademark and demanded that Defendant, by March 31, 2023, cease and refrain from using the WE-DO-IT trademark or any mark that contains the WE-DO-IT trademark or is otherwise substantially identical or deceptively similar to the WE-DO-IT trademark, and withdraw its U.S. Trademark Application No. 97/684,180.

48. Rather than complying, Defendant, on March 10, 2023, filed an action in the Delaware Court of Chancery, asserting numerous claims, including trademark infringement, against Dr. Hesse, Plaintiff, we-do-IT Holding Pty Ltd. and U.S. entities formed to be part of the we-do-IT Group – SMPP USA Inc., we-do-IT BETTER Inc., and we-do-IT Global Inc.

49. Further, on June 13, 2023, Defendant filed a Notice of Opposition with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board, opposing the registration of Plaintiff's U.S. Trademark Application No. 79/346,062. The opposition was assigned proceeding number 91285697.

50. As of the date of filing this complaint, Defendant continues to use the WE-DO-IT trademark, such use being unauthorized by Plaintiff and, in fact, in contravention of Plaintiff's explicit demands.

## COUNT I
## DECLARATORY JUDGMENT

51. Plaintiff incorporates paragraphs 1 through 50 as though fully set forth herein.

11

52. Plaintiff is the owner of registered and common law rights in the WE-DO-IT trademark, as described herein.

53. Plaintiff is the senior user of the WE-DO-IT trademark as it and/or related companies began use of the mark in interstate commerce prior to Defendant's claimed first use of the mark in interstate commerce.

54. Without authorization, Defendant is continuing to use Plaintiff's WE-DO-IT trademark to deliberately create confusion in the marketplace.

55. Further, Defendant has filed U.S. trademark application No. 97/684,180 for a design mark that incorporates the WE-DO-IT trademark.

56. Additionally, Defendant has filed a notice of opposition with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board opposing the registration of Plaintiff's U.S. Trademark Application No. 79/346,062 for the WE-DO-IT trademark.

57. There is a present and substantial controversy, therefore, between Plaintiff and Defendant regarding the senior use and ownership of the WE-DO-IT trademark.

58. Plaintiff and Defendant have adverse legal interests.

59. Defendant's actions to register a WE-DO-IT trademark, and to oppose Plaintiff's WE-DO-IT trademark application, sufficiently demonstrates a real and immediate need for the issuance of a judgment declaring that Plaintiff is the owner of the WE-DO-IT trademark.

**COUNT II**
**TRADEMARK INFRINGEMENT / FALSE ASSOCIATION / UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

60. Plaintiff incorporates paragraphs 1 through 59 as though fully set forth herein.

61. Plaintiff is the owner of registered and common law rights in the WE-DO-IT trademark, as described herein.

62. Plaintiff is the senior user of its WE-DO-IT trademark as it and/or related companies began use of the mark in interstate commerce prior to Defendant's claimed first use of WE-DO-IT in interstate commerce.

63. Defendant does not have authorization, license or permission from Plaintiff to advertise, market or offer its IT services under the WE-DO-IT name, which is identical to Plaintiff's WE-DO-IT trademark.

64. Defendant has been aware of Plaintiff's WE-DO-IT trademark since Defendant's formation in 2010 by virtue of its acceptance of a license from Plaintiff to use the WE-DO-IT trademark. Thus, Defendant knowingly, intentionally and willfully used Plaintiff's WE-DO-IT trademark without Plaintiff's authorization after Plaintiff terminated the license effective March 31, 2023, and Defendant did so to deliberately confuse customers.

65. Moreover, by accepting a license to Plaintiff's WE-DO-IT trademark and operating as Plaintiff's trademark licensee for over 10 years, Defendant is estopped from challenging the validity of Plaintiff's ownership of and exclusive right to use the WE-DO-IT trademark.

66. Defendant has made use of Plaintiff's WE-DO-IT trademark and/or other words, terms, names, symbols or devices, or any combination thereof, false designations of origin, false or misleading descriptions of fact, or false or misleading representations in connection with Defendant's business activities which are likely to cause confusion and mistake among consumers that (a) Defendant and/or its services originate with Plaintiff, (b) there is some affiliation, connection or association between Defendant and/or its services and Plaintiff, and/or (c) Defendant and/or its services are being offered to consumers with the sponsorship and/or approval of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff has been substantially injured as a result of Defendant's actions.

67. Defendant's unauthorized use of Plaintiff's WE-DO-IT trademark in connection with Defendant's business activities was willful, intentional, and undertaken in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of such business activities, and to gain for Defendant the benefit of the enormous goodwill associated with Plaintiff's WE-DO-IT trademark.

68. The threat of the loss of Plaintiff's right to control and exploit the use of its WE-DO-IT trademark and the substantial reputation, goodwill, and indelible association with Plaintiff is real and substantial.

69. As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees in an amount to be proven at trial.

70. Defendant's misconduct also has caused and will cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in its WE-DO-IT trademark. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**PRAYER FOR RELIEF**

WHEREFORE, we-do-IT Pty Ltd. respectfully requests that the Court enter an order:

A. Declaring Plaintiff as the owner and senior user of the WE-DO-IT trademark;

B. Permanently enjoining Defendant, and its managers, associates, agents, representatives, servants, employees, successors and assigns, and all others acting in concert therewith, or having knowledge thereof, from using, exploiting or trading on Plaintiff's WE-DO-IT trademark or any derivations or colorable imitations thereof;

C. Permanently enjoining Defendant, and its managers, associates, agents, representatives, servants, employees, successors and assigns, and all others acting in concert therewith, or having knowledge thereof, from engaging in any other activity constituting unfair competition with Plaintiff, or constituting infringement of Plaintiff's WE-DO-IT trademark;

D. Ordering Defendant to withdraw U.S. Trademark Application No. 97/684,180;

E. Ordering Defendant to withdraw its opposition to U.S. Trademark Application No. 79/346,062;

F. Awarding actual damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b);

G. Awarding Plaintiff's costs and attorneys' fees and expenses, together with prejudgment interest; and

H. Awarding any other such relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Dated: July 28, 2023

**K&L GATES LLP**

/s/ *Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. O'Connor (No. 6569)
600 N. King St., Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steven.caponi@klgates.com
megan.oconnor@klgates.com

*Attorneys for Plaintiff*